# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| In re: Zantac (Ranitidine) Litigation | ) ) ) ) | General Zantac Litigation<br><br>C.A. No.: N22C-09-101 ZAN |

Submitted: March 27, 2026
Decided: April 14, 2026

## OPINION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### GRANTED

*John J. Snidow, Esquire,* (argued) Keller Postman, Washington, D.C., *pro hac vice* Attorneys for Plaintiffs.

*Raeann Warner, Esquire*, Collins, Price, Warner Woloshin, Wilmington, Delaware, Attorney for Plaintiffs.

*Bernard G. Conaway, Esquire*, Conaway Legal, LLC, Wilmington, Delaware, Attorney for Plaintiffs.

*Patrick C. Gallagher, Esquire*, Jacobs and Crumplar, PA, Wilmington, Delaware, Attorney for Plaintiffs.

*Joseph J. Rhoades, Esquire* and *Stephen T. Morrow, Esquire,* Rhoades and Morrow, LLC, Wilmington, Delaware, Attorneys for Plaintiff.

*Andrew T. Bayman, Esquire*, (argued) King & Spaulding, Atlanta, GA., Attorney for Defendants.

*Nancy Shane Rappaport, Esquire*, DLA Piper US LLP, Wilmington, Delaware and *Ilana H. Eisenstein, Esquire*, DLA Piper US LLP, Philadelphia, PA, Attorney for Attorneys for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.

*Joseph Naylor, Esquire*, Swartz Campbell, Wilmington, Delaware, Attorneys for Boehringer Ingelheim Pharmaceuticals, Inc. and Boehringer Ingelheim USA Corporation.

*Sean T. O'Kelly, Esquire and Gerard M. O'Rourke, Esquire*, O'Kelly & O'Rourke, LLC, Wilmington, Delaware, Attorneys for Patheon Manufacturing Services LLC.

*Daniel J. Brown, Esquire*, McCarter & English, Wilmington, Delaware, Attorneys for Pfizer, Inc.

*Colleen Shields, Esquire and Patrick M. Brannigan, Esquire*, Eckert, Seamans, Cherin & Mellott, LLC, Attorneys for GlaxoSmithKline, LLC.

**Jones, J.**

On July 10, 2025, the Delaware Supreme Court issued a decision reversing this Court's May 31, 2024, decision which denied Defendants' *Daubert* challenges to Plaintiffs' proposed general causation experts.[1]  The Supreme Court ruled that the trial court had "erred in adopting a standard that favored or presumed the admissibility of expert testimony."[2]  The Supreme Court also ruled that for a general causation opinion to be admissible, "a general causation expert's conclusion must reliably bridge the gap by scientifically linking the disease-causing agent to the product at issue."[3]  In other words, "ultimately an expert offering an opinion regarding general causation for a product must opine as to the product itself."[4]

Following the Supreme Court decision, Plaintiffs filed a motion asking the Court to Modify Case Management Order Number 7 to allow Plaintiffs to supplement their expert reports.  Contemporaneously, Defendants moved for summary judgment maintaining that the Supreme Court decision in this case mandates that all of Plaintiffs' claims must be dismissed.  On December 1, 2025, this Court denied Plaintiffs' motion to supplement.  In the December 1, 2025 decision, this Court asked the parties to provide supplemental briefing on which Plaintiffs were bound by the Court's December 1, 2025 opinion and to complete the briefing on the Defendants' Motion for summary judgment.  Briefing has been

---

[1] *In re Zantac (Ranitidine) Litig.*, 342 A.3d 1131 (Del. 2025).
[2] *Id.* at 1134.
[3] *Id.* at 1153 (citing *In re Asbestos Litig.*, 911 A.2d 1176, 1202 (Del. Super. Ct. 2006)).
[4] *Id.* at 1154.

completed. This is Court's decision on which Plaintiffs are bound by the December 1, 2025 decision and on Defendants' motion for summary judgment.

I first turn to the question of which Plaintiffs are bound by the Court's December 1, 2025 decision.

Plaintiffs maintain that the Court's decision applies only to the select few Plaintiffs who were in the bellwether pool. Defendants maintain that the decision applies to all Plaintiffs who had filed cases prior to the December 1, 2025 decision. Resolution of the parties' dispute must begin with analysis of the Court's case management orders entered in this case.

The parties negotiated and presented the Court various case management orders. The parties agree that each of the CMOs were heavily negotiated before being presented to the Court for consideration.[5] Eventually the Court entered a number of case management orders including CMO 1, 2 and 7.

CMO 1 provides in its first paragraph that "this CMO will apply to all personal injury and/or wrongful death cases alleging the use of prescription or over-the-counter Zantac … currently pending in the Superior Court of the State of Delaware, as well as any future cases that are filed in, transferred to or otherwise pending in this Court."[6] CMO 1 established a dual-track structure. The "General Causation Track" was "designed to obtain a threshold ruling on the admissibility of

---

[5] D.I. 534, at 4-6 ("Plaintiff's Mot.to Mod."); D.I. 615, at 2 ("Def. Supp. Brief"); D.I. 626, at 12 ("Plaintiff's Reply").
[6] D.I. 38, at 1 ("CMO 1").

4

expert evidence related to general causation application to all matters in the Zantac Litigation."[7]  The order also established a "Bellwether Track" that focused on "identifying representative cases for bellwether discovery and trials."[8]  The purpose of this dual track allowed each side to pursue its own goal: "Defendants wanted to conduct general-causation discovery because they 'thought they could win on *Daubert*'"[9] and Plaintiffs "wanted a trial [date] as soon as possible as they felt confident that they could win *Daubert* on general causation."[10]  The order provided:

> If Defendants' *Daubert* motions relating to general causation are granted as to any Delaware Cancers, such that summary judgment is Granted as to all claims alleging those cancers, then plaintiffs in the Zantac Litigation alleging those cancers will not need to be severed from multi-plaintiff complaints. Those plaintiffs' claims will be dismissed with prejudice, so that those plaintiffs may appeal the Court's General Causation Ruling if desired.[11]

CMO 2 was entered on June 13, 2023.  It provided that the parties "will be bound by any general causation rulings issued by the Court."[12]  CMO 7, which was entered on August 9, 2024, noted that "[i]n CMO 2, the parties stipulated to be 'bound by any general causation rulings issued by the Court' and the Court entered such stipulation on June 13, 2023."[13]

---

[7] *Id.* at 2.
[8] *Id.*
[9] Def. Supp. Brief, at 2-3 (quoting Plaintiff's Mot. to Mod., at 5).
[10] *Id.* at 3 (quoting Plaintiff's Mot. to Mod., at 5).
[11] CMO 1, at 18.
[12] D.I. 115, at 2 ("CMO 2").
[13] D.I. 383, at 7, n. 4 ("CMO 7").

Defendants contend that the CMO is clear and unambiguous and that the order applies to all cases filed before December 1, 2025. Plaintiffs maintain that the order is ambiguous in two ways. First, Plaintiffs argue that CMO 2 explicitly contemplates specific causation experts being allowed to testify notwithstanding any ruling on the admissibility of the general experts. In support of this position, Plaintiffs point to language in CMO 2 which provides that even if the Court were to grant "Defendants' *Daubert* motions relating to general causation as to any Delaware Cancers, the parties may proffer additional experts on … specific causation issues."[14] Plaintiffs assert that provision means that even if general causation experts were excluded with respect to one or more Delaware cancers, entry of summary judgment against Plaintiffs diagnosed with those cancers is not automatic. Plaintiffs read this language to suggest that they would have a chance to provide specific causation experts.

Next, Plaintiffs point to CMO 1 for their second ambiguity argument. CMO 1's states "[i]f Defendants' *Daubert* motions relating to general causation are granted as to any Delaware Cancers, *such that summary judgment is granted as to all claims alleging those cancers, then* those Plaintiffs claims will be dismissed with prejudice."[15] Plaintiffs claim that the emphasized provision creates ambiguity over what happens if the Court were to exclude Plaintiffs general causation experts.

[14] CMO 2, at 2.
[15] CMO 1, at 18 (emphasis added).

6

According to the Plaintiff, if the parties and the Court intended for summary judgment to flow automatically after the Court granted Defendants' *Daubert* motions, there would be no need for that emphasized language. According to Plaintiffs the CMO would have read that if the *Daubert* motions are granted than Plaintiffs claims will be dismissed and the inclusion of the emphasized language indicates that summary was not to flow automatically if Plaintiffs' general causation experts were excluded.

I do not find the CMO orders to be ambiguous. Turning first to CMO 2, Plaintiffs' argument ignores the full relevant language of CMO 2 which provides:

> Whether the Court grants in part or denies Defendants' *Daubert* motions relating to general causation as to any Delaware Cancers, the parties may proffer additional experts on regulatory, supply chain, liability, and specific causation issues (including specific causation experts who also offer general causation opinions), ***though they will be bound by any general causation rulings issued by the Court.***[16]

The bolded clause above mandates that all Plaintiffs will be bound by any general causation ruling issued by the Court. Additionally, this passage follows another clause that forbids the parties from proffering "non-general causation experts" during discovery on the General Causation Track, noting that those experts would be reserved for subsequent expert discovery if Plaintiffs were able to make the threshold showing of general causation.[17] In short, CMO 2 establishes the first

---

[16] CMO 2, at 2 (emphasis added).
[17] *Id.*

offering of admissible expert opinions on general causation is a condition precedent

for proffering additional experts on other topics. There is no ambiguity in CMO 2.

Nor is there an ambiguity in CMO 1. CMO 1 provides as follows:

> If Defendants' *Daubert* motions relating to general causation are granted as to any Delaware Cancers, such that summary judgment is granted as to all claims alleging those cancers, then plaintiffs in the Zantac Litigation alleging those cancers will not need to be severed from multi-plaintiff complaints. Those plaintiffs' claims will be dismissed with prejudice, so that those Plaintiffs may appeal the Court's general causation Ruling, if desired.[18]

The clause "such that summary judgment is granted as to all claims alleging those

cancers" is not superfluous as Plaintiffs suggest. Rather, the passage establishes a

clear sequence of events: (1) Defendants' *Daubert* Motion is granted in full as to the

Delaware Cancer; (2) the Court grants summary judgment as to all claims alleging

that Cancer; (3) Plaintiffs are relieved of their burden to file severed complaints for

the cases alleging that Cancer because that would be no point; (4) the parties submit

a list of the cases alleging that Cancer to the Court for dismissal with prejudice; (5)

the Court enters an order dismissing the cases with prejudice; and (6 the dismissed

Plaintiffs appeal if desired. Again, there is no ambiguity in CMO 1.

The CMOs are clear that if the Defendants' *Daubert* motions are granted as

to any Delaware Cancer, summary judgment is warranted as to that Cancer, and

dismissal with prejudice will follow the grant of summary judgment. CMO 1 clearly

---

[18] CMO 1, at 18.

provides that it applies to all filed and future cases, and it is not, as argued by the Plaintiffs, limited to the Bellwhether Plaintiffs.

Even if I accept Plaintiffs' argument that the CMO's are somehow ambiguous, I would still find that the CMO's apply to all Plaintiffs who filed cases on or before December 1, 2025. This Court reviewed the CMO's before they were signed and approved the orders. It was certainly the intent of the Court that an initial critical phase in these cases was to determine if the Plaintiffs could prove general causation and that an adverse ruling on this issue would result in summary judgment. This was not only the Court's intent, but it was clearly the parties' intent. This is demonstrated no better than the multiple times Plaintiffs represented to this Court that an adverse ruling on general causation would result in the dismissal of over 80,000 Plaintiffs cases.

Plaintiffs submitted omnibus briefing on the Master Docket on behalf of all Plaintiffs. In that briefing, Plaintiffs bluntly acknowledged that a loss on the general causation would likely result in the dismissal of "75,000" cases.[19] In their Motion to Modify, Plaintiffs again argued numerous times that "tens of thousands of [Plaintiffs]" faced likely dismissal if they were not permitted additional expert discovery.[20] In fact, Plaintiffs explicitly suggested that a denial of their motion

---

[19] D.I. 305, Pls.' Opp. To Defs.' Mot. To Exclude Pls.' General Causation Experts' Opinions, at 14.
[20] See, e.g., Mot. To Mod., at 3 ("Tens of thousands of [Plaintiffs] could face dismissal of their claims against the manufacturers of a recalled drug."); see also id. at 13, 15, 19, 24.

would result in "mass summary judgment."[21]  At the status hearing in July 2025, where all Plaintiffs' firms were represented, this Court asked Plaintiffs' Leadership point-blank whether "Defendants win" if Plaintiffs' Motion to Modify CMO 7 were denied, and Plaintiffs' Leadership responded, "I think that likelihood is pretty strong, Your Honor[.]"[22]

To suggest that the *Daubert* challenges applied only to the Bellwhether cases ignores not only the expressed intent of the parties and their words but the history of this litigation.  Plaintiffs were subject to an MDL.  Suit was filed in Delaware shortly before the MDL Judge Robin Rosenberg issued her decision granting Defendants' *Daubert* motions and essentially gutting the litigation.[23]  With this background in mind, Plaintiffs had to appreciate that they needed to put their best evidence forward to avoid suffering the same fate that Plaintiffs suffered in Judge Rosenberg's court. Unfortunately, they were not able to muster sufficient evidence to pass Delaware's *Daubert* requirements.  To now argue that only a few cases were affected is simply not supported by anything in the record.

The record is clear that both the parties and the Court understood that any rulings on general causation would apply docket-wide.  The case management orders

---

[21] *Id.* at 21.
[22] Ex. B, July 31, 2025, Hearing Tr. At 9:7-12:7.
[23] *See generally In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075 (S.D. Fla. 2022).

reflect that. The parties' words and actions also reflect that fact. Plaintiffs cannot now be heard to complain otherwise.

Plaintiffs argue that a decision against them will violate both the federal and Delaware constitutions. In support of their argument Plaintiffs point to the Seventh Amendment right to a jury trial and to due process concerns. The essence of Plaintiffs' argument is that summary judgment is unconstitutional under both the United States Constitution and the Delaware Constitution. That is clearly not the law. The U.S. Supreme Court has clearly established that summary judgment does not infringe upon the right to a jury trial.[24] Nor can the Delaware constitution be read to contain a similar prohibition. Nor is the result any different in a mass tort case where the court has established procedures as those in the instant case.

> This result is not changed by the Court's decision to stage discovery, consistent with the guidance of the JPML, so as to front-load discovery on the potentially dispositive issue of general causation. The alternative—in which summary judgment motions practice on this global issue would have been deferred until fact and expert discovery as to the facts and circumstances attendant to each of the approximately 920 plaintiffs in this MDL—would have consumed enormous resources of the parties, without adding to the pool of evidence adduced here on the gateway issue of general causation. Plaintiffs have not identified any authority to the effect that staging discovery to permit efficient summary judgment motions practice on a potentially dispositive threshold issue abridges a party's Seventh Amendment rights.
>
> Nor, to the extent plaintiffs imply that the Court has made a factual determination that LNG could not have caused

---

[24] *Parklane Hosiery Co., Inc v. Shore,* 439 U.S. 322, 336 (1979).

plaintiffs' IIH, has the Court done so. Rather, the Court held in its *Daubert* ruling, as a legal matter, that plaintiffs' experts have failed to offer reliable, admissible testimony of general causation, consistent with *Daubert*. And the Court now holds, also as a legal matter, that the remaining evidence also fails to supply a basis on which a jury could reliably find the required element of general causation. In the absence of a genuine dispute of material fact as to causation, summary judgment is appropriate. *See McClamrock v. Eli Lilly & Co.*, 504 F. App'x 3, 4 (2d Cir. 2012) ("[The] Seventh Amendment right to a jury trial ... is not violated by an award of summary judgment where, as here, there are no disputed issues of material fact.").[25]

Plaintiffs due process concerns fail for at least three reasons. First, every Plaintiff who filed suit after the entry of the CMO 1 had notice that the consolidated litigation was governed by CMO 1.[26] Second, all the CMOs were negotiated and agreed to by Plaintiffs' leadership on behalf of all Plaintiffs. CMO 1 expressly delegated to Plaintiffs' leadership the ability to enter into discovery stipulations on behalf of all Plaintiffs. Appointing leadership for pre-trial purposes comports with due process.[27] Third, every Plaintiff who filed in the consolidated litigation in Delaware reaffirmed their commitment to be bound by the CMOs when they accepted the benefits created by those agreements.[28] Plaintiffs agreement to be bound by the general-causation ruling was reiterated two separate times in CMO 2

---

[25] *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 358 (S.D.N.Y. 2019), *aff'd*, 982 F.3d 113 (2d Cir. 2020).
[26] *See Vance v. Irwin*, 619 A.2d 1163, 1165 (Del. 1993).
[27] *See In re Baycol Prods. Litig.*, 2007 WL 9717940, at *1-2 (D. Minn. July 13, 2007).
[28] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 349–50 (Del. Ch. 2003).

and 7. In short, Plaintiffs had notice of the CMO's, never objected to their application to them, and accepted the benefits and the risks associated with them. They now cannot be heard to complain that their due process rights were violated.

Plaintiffs maintain that by applying the Court's December 1, 2025 decision to all Plaintiffs violates the Delaware promise that the determination of causes should be according to the merits. This exact issue was addressed in this Court's December 1, 2025 opinion:

> The Court understands it is the public policy of Delaware that cases be decided on the merits. The Delaware Supreme Court has made it clear that this policy requires the Court to fashion remedies short of dismissal when expert deadlines have not been met. However, this is not a situation where an expert deadline was not met. The deadline was met with inadequate evidence. This is also not a situation where the Plaintiff was not given a full and fair opportunity to present its case. Plaintiffs were given a full and fair opportunity to present their evidence. Plaintiffs decided what evidence to present with a well settled body of Delaware law on the topic, as well as a Federal MDL decision that pointed out the flaws of Plaintiffs experts. They chose to proceed ahead as they did and cannot now be heard to complain that they should get a mulligan.
>
> Plaintiffs, first in the MDL and now in this Court, have been given adequate opportunity to muster what evidence they could gather to satisfy the general causation standard and show that various cancers result from the ingestion of Zantac. Unfortunately, the evidence Plaintiffs choose to present did not meet the standard required under Delaware law. To afford Plaintiffs the relief requested would essentially allow Plaintiffs to start over. That would be fundamentally unfair to Defendants.[29]

---

[29] *In re Zantac (Ranitidine) Litig.*, 2025 WL 3459343, at *4 (Del. Super. Ct. Dec. 1, 2025) (footnotes omitted).

It is this Court's conclusion that all cases filed before December 1, 2025 are controlled by this Court's December 1, 2025 decision. Therefore, all of those cases are dismissed.

As for cases filed post December 1, 2025, I am not prepared to establish the Rule to Show Cause process advocated by the Defendants. Post December 1, 2025, Plaintiffs are free to present any additional evidence to meet Delaware' *Daubert* requirements. Whether this will have to be done on a case-by-case basis or in another coordinated process is a question that the parties must first address amongst themselves and then come to the Court with a proposed course of action going forward as to any cases filed post-December 1, 2025.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants have moved for summary judgment maintaining without evidence of general causation, Plaintiffs cannot establish a prima facia case under any of the laws that may be applicable to the claims of Plaintiffs. Plaintiffs oppose the motion for two reasons. First, Plaintiffs maintain that this Court should defer ruling on Defendants' motion until the Unites States Court of Appeals for the Eleventh Circuit issues its decision in the MDL appeal. Second, Defendants contend that summary judgment is not appropriate because the Defendants cannot show that general causation is a necessary element of Plaintiffs' claims.

14

In the MDL case, Judge Rosenberg excluded all MDL Plaintiffs' general causation experts and entered summary judgment for Defendants.[30] Judge Rosenberg's decision has been appealed to the Eleventh Circuit. Oral argument occurred in October 2025. Plaintiffs argue that some commentators have noted following the oral argument on the appeal, there is a real possibility that the MDL decision will be reversed.[31] Plaintiffs maintain that this Court's December 1, 2025 order relied heavily on Judge Rosenberg's decision to deny Plaintiffs motion to open the record. According to Plaintiffs, a reversal by the Eleventh Circuit would undermine this Court's December 1, 2025 decision. Therefore, Plaintiffs contend this Court should defer its ruling until the Eleventh Circuit issues its decision. Defendants respond arguing that there is no basis for this Court to defer summary judgment.

Plaintiffs are correct that the MDL decision played some role in this Court's decision to deny Plaintiffs' motion to open discovery. However, it did not play a sufficient enough role for this Court to defer ruling on Defendants' summary judgment motion and possibly open up discovery if the Eleventh Circuit overrules Judge Rosenberg. This Court's December 1, 2025 opinion applied the *Coleman* factors[32] and concluded that three of the factors weighed in favor of Defendants.[33]

---

[30] *See generally In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075 (S.D. Fla. 2022).
[31] Plaintiffs Brief, ¶ 2.
[32] *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102 (Del. 2006).
[33] *In re Zantac (Ranitidine) Litig.*, 2025 WL 3459343, at *3 (Del. Super. Ct. Dec. 1, 2025).

The application of the Coleman factors rested on this Court's conclusion that the Delaware Supreme Court did not adopt a new *Daubert* standard or general causation standard when it excluded Plaintiffs' experts. Therefore, this Court concluded Plaintiffs were not entitled to a mulligan in the face of Delaware's clear and existing law on causation that Plaintiffs were unable to meet. This Court will not defer its summary judgment decision pending a ruling by the Eleventh Circuit.

Plaintiffs contend that Defendants are not entitled to summary judgment because general causation is not an essential element of Plaintiffs' prima facia case in every jurisdiction. This same argument has been made in other cases when a Court has been faced with a summary judgment motion in a mass tort case where Plaintiffs failed to satisfy *Daubert* on general causation. In these cases, the Courts conducted a state-by-state analysis and concluded that general causation is an essential element of the Plaintiffs' case and granted summary judgment.[34] I adopt the conclusions of those cases. General causation is part of Plaintiffs' prima facia case in all states.[35] Where general causation is in fact an essential element of

---

[34] *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 799 (N.D. Ohio 2004), *aff'd sub nom. Meridia Prods. Liab. Litig. v. Abbott Lab'ys*, 447 F.3d 861 (6th Cir. 2006); *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 124 (2d Cir. 2020); *In re Bausch & Lomb Inc. Contacts Lens Sol. Prods. Liab. Litig.*, 693 F. Supp. 2d 515, 518 (D.S.C. 2010), *aff'd sub nom. Fernandez-Pineiro v. Bausch & Lomb, Inc.*, 429 F. App'x 249 (4th Cir. 2011); *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 349 (6th Cir. 2024).

[35] I reject Plaintiffs' argument that Alaska general causation is not required as part of the prima facia case. I find that Alaska does require a finding of general causation. *State v. Coon*, 974 P.2d 386, 404-05 (Alaska 1999).

16

Plaintiffs' prima facia case and where general causation has not been proven, Defendants are entitled to summary judgment.[36]

Having found that general causation is a required element of each of the Plaintiffs' prima facia case and that Plaintiffs have not demonstrated general causation, summary judgment must be **GRANTED** in favor of the Defendants.

**IT IS HEREBY ORDERED THIS** 14th day of April, 2026 that summary judgment is **GRANTED** in favor of the Defendants as to all complaints filed on or before December 1, 2025.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:    Counsel of Record via *File&ServeXpress*

---

[36] *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 956, 968 (D. Minn. 2009); *In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 501 (E.D. Pa. 2016), *aff'd sub nom. In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787 (3d Cir. 2017*); In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 485 (D.S.C. 2017); *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 327–28 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017); *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 349 (6th Cir. 2024); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830-33 (E.D. Tex. 2002); *In Re: Bausch & Lomb Contacts Lens Solution Products Liability Litigation,* 693 F. Supp. 2d 515, 518 (D.S.C. 2010).